at your request. Singh v. NYCTL 2009-A Trust. Hang on, Mr. Grobman, just a second. Go ahead, Mr. Grobman. Good morning, Your Honors. Paul Grobman for the Appellant. At issue on this appeal is whether a plaintiff in a New York City water lien foreclosure action is permitted to demand and collect legal expenses by representing that they are due in a payoff quote or invoice before judgment, where the governing fee-shifting statute does not permit their recovery until after a judgment, a request for such fees, and their reward by the court. Well, on the state law issue, does state law preclude a settlement that allows for the payment of attorney's fees? Of course, state law does not preclude that. There was no... So the servicing on the state law issue, we'll set aside the North Pennington issue for a minute, but on the state law issue, someone has not paid their sewer bills or their water bills, there's now a lien against their property, the municipality transfers, it sells that lien to a private collection agency. The collection agency notifies the individual and says, these are what the liens are, but our expenses are an extra $100, and if you want to sell it right now and not go to court, you have to pay us X plus $100. There's nothing in the law that precludes that, is there? There is, because it's a false representation that they are presently due in owing, Your Honor. Well, they're due in owing if it's a settlement, but they're not due in owing in terms of enforcement of lien. Once you enforce the lien, then they become part of the judgment, which then encumbers the property, which then when the property is sold, they're paid first before the rest of the sums are remitted to other lien holders who are junior to them. But my question was, do they prevent you from entering into a settlement in which the settlement price is something of the lien amount plus a sum of money? And the answer to that is no, isn't it? It does not prevent a settlement. However, a New York City taxpayer, a New York City water and sewer user has an absolute right, a statutory right, and an equitable right to pay this off at any time by paying the amounts due. So by representing- Did your client do that? Excuse me? Did your client do that? My client asked for a payoff quote, and in the payoff quote, which is an invoice, which is what they always send, the payoff quote, the payoff quote says under amount due, it says $3,600 in legal expenses. Now that is false. You would incentivize foreclosures then? You would, what you'll do is drive up the cost of these proceedings in your interpretation that they'll all go to foreclosure, they won't settle unless you pay the full sum right up front. Not- Well, no, wait a second. I'm sorry. That's the one way to do it. If your client had just walked in and handed them the full sum of money, it's an argument I suppose you could make that he's paid off the lien, but now they own the lien and they've decided that there's a cost associated with their ownership of the lien. But he has a right, a statutory right, at any point before a foreclosure judgment to say, and this is what he did, how much do I- $3,600 of money and then several installments, 12 I think they were, and then actually he breached that. He didn't do that. He didn't make that payment. He didn't make the payments. He didn't walk in and tender the full sum of money. He walked in and entered into an agreement to pay a sum of money up front and then 12 installments. That's what he did. First he asked- Right? Isn't that what he did? First he asked for a payoff quote. The issue here is whether the New York City Tax Lien Trusts are allowed to issue payoff quotes, because this is their policy, which say that legal fees are due when owing. There are hundreds and hundreds of cases which say, because all fee and expense shifting statutes have a certain point where- The fee and expense shifting statutes are relative with regard to the enforcement of liens such that they become a part of the lien, but I don't think that that precludes someone from saying, I own the lien now and if you want to pay for it outside of the foreclosure, you have to pay me a few bucks to settle it. The question is, what did he owe? The question is, what is the representation that was made? If your Honor is correct, then it would basically be a license to commit fraud. This deals with- Fraud is a misrepresentation of a fact to another individual who knowingly and reasonably relies upon that misrepresentation. What's the misrepresentation of fact here? The misrepresentation is that he was given an invoice which said amount owed. An invoice. This was outside. Misrepresentation is whether they could impose the fee. The misrepresentation was whether the amount was owed. Okay. All right. There are hundreds of cases under the FDC- You and I have a different understanding of fraud. Why don't you tell me why this isn't precluded by the Noor-Pennington doctrine? If I could just take one second with- If you don't want to tell me about the Noor-Pennington doctrine, don't tell me about it. I don't think you and I will agree on what is fraud. Okay. With regard to the fraud, 30 seconds. If you look at the Veatch, if you look at Shula, all of the cases under the FDCPA, which deal with the question of whether a representation is misleading- I understand New York law and the law of fraud. I spent a little time in the New York courts. I've written on fraud on occasion back when I was a state court judge. So your whole premise, whether you get into the federal statutes, whether it's fraud- Your yellow light is on now. Now talk to me about Noor-Pennington. Noor-Pennington, Your Honor, to the extent that a party is precluded from raising a claim based on a false representation regarding legal fees or expenses that erode, then it would not only preclude actions under this statute, but basically preclude any actions under any fee or expense-shifting statute in the United States. Courts have routinely found that where there is a representation in the adjudicatory process, Noor-Pennington doesn't apply. Courts have also routinely found that First Amendment rights are not immunized from regulations when they are used as part of conduct which violates a valid statute. And Section 335 and 332 here are valid statutes. In fact, federal courts have recognized that the allocation of attorneys' fees and expenses in litigation is far removed from the First Amendment right to petition. And you can look at the premier electrical case in the Seventh Circuit where the court said that any other result other than allowing claims based on the improper allocation of fees and expenses would mean that fee-shifting statutes themselves are unconstitutional. Does that mean that in any settlement negotiations that go on between parties, during the settlement negotiations, Noor-Pennington would not apply if you in fact say that there may be a statute which is being violated in the representations in the settlement discussions? I don't believe that that's the case. Here we're dealing with a situation, it is not a settlement, because the New York City taxpayer has the absolute right to pay these amounts off. He did not owe these amounts at the time that he asked for a payoff. What the Seventh Circuit said was the proposition that the First Amendment prohibits or even has anything to say about fee-shifting statutes in litigation seems too far-fetched to require extended analysis. All right, thank you. Your time is up. You've got some rebuttal time. Did I butcher that? Bastilli, Your Honor. Bastilli, I got it right. Still got it. Go ahead. Good morning, and may it please the Court. My name is Chris Bastilli from Covington and Burling on behalf of all appellees. In the decision below, Judge Sweet issued a thorough, well-considered 45-page opinion, comprehensively considering and rejecting each of plaintiff's claims. He rejected each individual cause of action for no fewer than three separate reasons and rejected plaintiff's far-fetched RICO claim for no fewer than seven separate reasons. Given the number of issues in this case and the amount of time allotted, I plan to focus my remarks today on two threshold issues, and it's the same two issues that, Your Honors, we're just discussing with Mr. Grobman. First, the threshold question of does New York law, the New York Administrative Code, allow the collection of attorneys' fees and costs prior to a final judgment? That's the first issue. Then the second issue is the application of the Norr-Pennington Doctrine to this case. Of course, if Your Honors have questions about any other issues, I'd be happy to answer them. Absolutely, Your Honor. Under the Norr-Pennington Doctrine, as it was clarified by the Supreme Court in the Peary v. Columbia Pictures case, the Norr-Pennington Doctrine precludes action Norr-Pennington Doctrine immunizes litigation conduct unless that conduct is objectively baseless. And the Court made clear that a claim can't be objectively baseless if there's any prospect of success on that claim. You know, as we'll hopefully get a chance to discuss later, we believe that New York law entirely supports the proposition that it's proper and appropriate to collect attorneys' fees and costs as part of the prejudgment resolution of a tax lien foreclosure action. But even if Your Honors disagree with that as a question of New York law, that position is certainly not objectively baseless. How do we know it's not objectively baseless? No court has ever agreed with Mr. Grobman's strained interpretation of the statute. By contrast, the interpretation of the statute on which appellees rely has been adopted and endorsed by the New York City Corporation Council, which is on the briefs with us and which has responsibility for interpreting and implementing the New York lien-release statute. And it's also now been considered by two separate federal judges, Judge Sweet in the decision below and Magistrate Judge Reyes in the Boyd case. In both instances, the courts concluded that appellees' interpretation of the statute, under which it's entirely proper and appropriate to seek attorneys' fees and costs prior to entry of a final judgment of foreclosure. So everyone who's ever looked at this statute, including two federal judges and the New York Corporation Council, agree that appellees have interpreted the statute correctly. Even if Your Honors disagreed with that proposition, those facts, I would submit, conclusively established that appellees' interpretation of the statute was not objectively baseless. Therefore, the sham exception to Noor-Pennington does not apply. And then the only other possible question on the Noor-Pennington doctrine is, do the demand letters sent by appellees, and in particular just two appellees, Exband and Tower, do those letters constitute litigation activities within the meaning of Noor-Pennington? And I submit that under this Court's decision in the primetime 24 case, those communications fall within the heartland of litigation communications. In the primetime case, this Court recognized that while not necessarily petitioning activity, certain activities incident to litigation fall within the protections of Noor-Pennington. And in particular, this Court identified demand letters and settlement communications as precisely the sort of litigation-related activities that are required under the breathing room principles of the First Amendment. And all, I mean, essentially the substance of the plaintiff's complaint is, relates to all of the settlement discussions. Anything that was involved here related directly to the settlement discussions between the parties. Isn't that correct? I think that's right. They all related to, first, the settlement agreement. There's the March 28 communication. That sends a payoff, quote, along with a settlement agreement. That's obviously and sort of paradigmatically a settlement communication. The next communication merely informed plaintiff that he was in breach of that settlement agreement. Then the next communication, again, informed him that he was in breach and essentially said, you know, this is sort of the equivalent of a threat letter that was recognized as subject to Noor-Pennington and Sosa. That letter essentially said, you've continued to breach your agreement, therefore we're going to reinstitute foreclosure proceedings against you. So all of the communications, and, you know, the others are in a similar vein. So all of the communications here are precisely the sort of settlement communications or, you know, litigation, pre-litigation threat letters, even though they, you know, occurred here in the context of ongoing, the state foreclosure litigation. So the communications all fall within the heartland of Noor-Pennington. Pre-litigation threat letters. Is that a legal term? It was the term used, I believe, by the Ninth Circuit in the Sosa decision, which we think is on point in a number of respects here, but in particular along with this Court's decision in primetime, illustrative of the fact that the communications here were all inextricably linked with the ongoing foreclosure proceedings and therefore fall within the protections of Noor-Pennington. Your opponent talks about the Fair Debt Collection Practice Act and its fee-shifting application and that that exempts, that that falls outside Noor-Pennington because it's legitimate congressional impingement upon litigation activities in state courts with a legitimate, you know, the petition clause is not absolute and the Supreme Court's acknowledged that. Am I right that the complaint, though, sounds in RICO and not in Fair Debt Collection Practice? Yes. The plaintiff does not bring an FDCPA claim. He originally asserted one. In the Boyd decision, this Court held that the collection of municipal tax liens is not subject to the FDCPA. So there's no FDCPA claim in this case. And we should look at it only in the context as pled, and he pleads in RICO? Correct. And the Fifth and the Seventh have rejected RICO claims as being exempt from I'm not aware of those decisions. I know that the Ninth Circuit in Sosa has, has held that Noor-Pennington applies to RICO. I meant, I meant it applies. Oh, I'm sorry. Yes. They don't, they don't, they're not, they don't. They're not exempt. It's exempt from Noor-Pennington. Correct. So I see I only have less than three minutes left. I'd just like to respond to one particular point that Mr. Grobman made with respect to the interpretation of the underlying provisions of the New York Administrative Code. You know, first it's clear that the attorney's fee provisions of the Administrative Code do not require a final judgment. You know, they say attorney's fees shall be awarded. It's mandatory. And it makes clear that the mere maintenance of a foreclosure action entitles a party to fees. Similarly, both the CPLR and the Administrative Code say that prevailing tax lien foreclosure plaintiffs are entitled to costs. And, you know, it makes no sense to say, and this is what Judge Sweet held, that a party is not entitled to obtain in settlement of a foreclosure action what they would be entitled to obtain at the conclusion of final judgment. Any other result would, you know, as Your Honor pointed out, lead to the result where there's no choice but for tax lien foreclosure plaintiffs to see every lawsuit through to final judgment to get what they're entitled to. It is true that if he walked in, well, is it true? After the liens have been sold to the servicing agencies, I presume they're sold, right? That's right. They're sold to the trusts and then they're serviced by the servicing agencies for the trusts. Who holds the trust? The trust is a creation of New York law. Okay. All right. So they still remain in essence the property of the municipality? They're not the property of the municipality. They're properties of the trust. I'll say I had paid my water bill in New York and all of a sudden there's a lien against my co-op on Bleeker Street for not paying the water bill other than the co-op board being unhappy about it. Can I walk in and just at the city treasurer's office and actually pay the amount of lien plus whatever interest is accrued? After the point at which the lien is sold, I think the proper, you know, it would no longer be the city to which that check would be properly addressed. But more important here is, you know, once foreclosure litigation is commenced, how big does the check have to be in order to get your lien released? And this is just what I want to touch on. Mr. Grobman has insisted repeatedly that there's a right, whether it's a sort of equitable right under common law or under statute for a tax lien foreclosure plaintiff to merely pay the principal balance and interest, not pay attorney's fees and costs, and get out of his lien. That is not what the statutes say. That's not what New York law says. And I would refer, Your Honors, to Harvey v. Mooney, 168 AD 169, on the question of equitable redemption. In New York, you have to pay attorney's fees and costs accrued in order to redeem your tax lien. Thank you, Your Honors. Mr. Grobman, you have two minutes. Thank you, Your Honors. First, regarding your question, under Section 332, it is not our position that after a foreclosure has been commenced, a taxpayer can get out of  The statute says attorney's fees. The question is whether the amounts are due before judgment. And Section 332 says explicitly that once you pay off the amounts that are due as of that point, the trusts are required to discharge the lien and dismiss the foreclosure. With regard to the question of the petition clause, the court below relied on SOSA and primetime. Actually, primetime actually said that the rejection of the settlement offer in that case did constitute a violation and actually reversed the rejection and the determination of the lower court that it constituted protected petitioning activity under Noor-Pennington. This court said that such an agreement related to settlement with absent litigation violate the Sherman Act and cannot be immunized by the existence of a common lawsuit. In the same respect, the SOSA case also said that First Amendment rights are not immunized when they are used as an integral part of conduct which violates a valid statute and dealt and looked at each of the representations. Finally, Your Honor, you spoke about the question of WICO and whether WICO is exempt. There are no categorical exemptions. And if, in fact, WICO actions were exempt where they dealt with litigation activity, then you wouldn't have this Court's case in Turkish, which is 27F3rd 2728, in which this Court reversed dismissal of a WICO claim, finding that misrepresentations in a settlement agreement terminating prior litigation constitutes a predicate act under WICO, or United States v. Eisen, which dealt with perjury, or Sykes v. Mel Harris, 780F3rd 70, in which this — Are they all in your brief, Mr. Grob? Yes, they are, Your Honor. Okay. That is deemed submitted. You'll hear from us in due course.